[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] We note that the record reflects that the defendant-appellant's correct name is D. Blaine Nease, M.D. However, in the interest of consistency, we retain the order used in the complaint and the trial court's case caption.
 DECISION AND JUDGMENT ENTRY
{¶ 1} D. Blaine Nease, M.D. appeals, and Vicki H. Lewis cross-appeals, the judgment of the Scioto County Court of Common Pleas in favor of Lewis upon her complaint for medical malpractice. First, Dr. Nease contends that the trial court erred in dismissing the jury without giving counsel an opportunity to review the jury's answers to the interrogatories and discover internal inconsistencies within those answers. We disagree because we find that Dr. Nease waived all but plain error with regard to any alleged inconsistency in the interrogatory answers by failing to ask to inspect the interrogatories before the court dismissed the jury. And, we do not find plain error.
 {¶ 2} Next, Dr. Nease contends that the trial court erred by permitting Dr. Lopez to testify, when Lewis failed to disclose him as an expert witness in the parties' joint pretrial statement, and when he was not qualified to testify as an expert witness. We disagree, because Dr. Nease suffered no prejudice as a result of Lewis' failure to disclose Dr. Lopez in the joint pre-trial statement, and because the record contains some competent, credible evidence supporting the trial court's decision to allow him to testify as an expert.
 {¶ 3} Next, Dr. Nease contends that the trial court erred in denying his motion for judgment notwithstanding the verdict, or, in the alternative, his motion for new trial. We conclude that the trial court did not err in overruling Dr. Nease's motion for JNOV because we find that, construing the evidence most strongly in Lewis' favor, there is some evidence upon which reasonable minds could come to different conclusions on the essential elements of Lewis' claim. Likewise, the trial court did not abuse its discretion in denying Dr. Nease's motion for a new trial based upon its decision to admit Dr. Lopez's testimony. Additionally, because Dr. Nease waived his objections to any inconsistencies in the interrogatory answers, we cannot find that the trial court erred as a matter of law in refusing to grant Dr. Nease's motion for a new trial pursuant to Civ.R. 59(A)(7).
 {¶ 4} Next, Dr. Nease contends that the trial court erred by permitting Lewis' counsel to cross-examine him with the answer filed by his counsel. Because we find that Dr. Nease has failed to demonstrate any prejudice resulting from such questioning, we find that any error in permitting such cross-examination was harmless.
 {¶ 5} Next, Dr. Nease contends that the trial court erred in admitting the testimony of certain individuals over timely objection. Because we find that Dr. Nease failed to cite any caselaw or statutes in support of his various arguments, we decline to address his fifth assignment of error pursuant to App.R. 16(A)(7) and App.R. 12(A)(2).
 {¶ 6} Finally, Dr. Nease contends that the trial court erred when it ordered him to pay post-judgment interest from the date that it first received a proposed judgment entry, instead of from the date that the court finally entered the judgment. Because we find that R.C. 1343.03 grants a prevailing party a right to post-judgment interest from the date that the judgment is rendered to the date on which the judgment is paid, and because the trial court did not enter a judgment in Lewis' favor until July 29, 2005, we agree.
 {¶ 7} In Lewis' sole assignment of error, she contends that the trial court erred by decreasing the jury verdict in an effort to reconcile apparent inconsistencies between the jury's answers to special interrogatories and the general verdict. We find that the trial court abused its discretion by reducing the jury's damage award without Lewis' consent. Therefore, we sustain Lewis' sole assignment of error.
 {¶ 8} Accordingly, we affirm in part, reverse in part, and remand this cause for further proceedings consistent with this decision.
 I. {¶ 9} On February 14, 2002, Dr. Nease performed a laparoscopic repair of Lewis' recurrent left inguinal hernia. During the course of the surgery, Dr. Nease used twenty-seven spiral tacks to secure polypropylene mesh at the site of the hernia. After the surgery, Lewis experienced bladder pain, spasms and difficulty urinating. Upon seeking further medical care for her symptoms, Lewis discovered that eight of the spiral tacks, intended to hold the mesh to the abdominal wall, actually went into her bladder. Dr. William T. Esham performed a second surgery to remove the polypropylene mesh and the spiral tacks from Lewis' abdomen. During that surgery, Dr. Esham successfully removed the mesh and all but one of the spiral tacks from Lewis' abdomen. He left the sole remaining tack in Lewis' abdomen because he was unable to locate it.
 {¶ 10} Lewis continued to suffer pain in her left groin, lower abdomen, and left thigh. In an effort to eliminate that pain, Dr. Steven M. Steinberg performed a third surgery to remove the sole remaining spiral tack from Lewis' abdomen.
 {¶ 11} In August 2003, Lewis filed her complaint against Dr. Nease alleging that he negligently performed her laparoscopic hernia repair surgery, causing injury to her bladder and to a nerve innervating her left thigh and/or lower abdomen. Lewis alleged that as a direct and proximate result of Dr. Nease's negligence, she suffered in the past, and would continue to suffer physical and emotional injuries, loss of her ability to enjoy life, as well as pain and mental anguish. Additionally, she alleged that she incurred and would continue to incur medical expenses and lost wages as a direct and proximate result of Dr. Nease's negligence.
 {¶ 12} In his answer, Dr. Nease denied all negligence. But, before trial Dr. Nease admitted that his negligence proximately caused the injury to Lewis' bladder, and that Dr. Esham's surgery was necessary to remove the spiral tacks from Lewis' bladder. However, Dr. Nease denied that his negligence proximately caused any injury to Lewis' left groin, lower abdomen, and left thigh. Therefore, he claimed that his negligence did not proximately cause Dr. Steinberg's surgery.
 {¶ 13} The matter proceeded to a jury trial. The jury heard the testimony of Dr. Nease; Dr. Ronald Lopez, Lewis' treating gynecologist; Dr. William Esham; and Dr. Steven Steinberg. Additionally, the jury heard the testimony of Lewis, her husband, her supervisor and two of her co-workers.
 {¶ 14} At the close of evidence, the trial court instructed the jury on the applicable law and submitted five special written interrogatories to the jury that it had prepared with the assistance of counsel for both parties. After deliberations, the jury returned a verdict for Lewis and awarded her damages of $603,539.96. The trial court reviewed the jury's answers to the interrogatories and stated, "The verdict forms appear to be in order." The trial court then read each of the interrogatories and the jury's answers into the record.
 {¶ 15} The following interrogatories, as submitted to and answered by the jury, are relevant to this appeal:
 {¶ 16} "JURY INTERROGATORY NO. 1[:] Other than the injury to the bladder, do you find by a preponderance of the evidence that plaintiff, Vickie H. Lewis, received an injury to her left groin, lower abdomen, and left thigh as a direct and proximate result of negligence by the defendant, Dr. Blaine Nease?" The jury placed a mark by "No," and six jurors signed the form.
 {¶ 17} "JURY INTERROGATORY NO. 2[:] Do you find from a preponderance of the evidence that the surgery by Dr. Steven Steinberg which plaintiff, Vickie H. Lewis, had on August 24, 2004, was required as a direct and proximate result of negligence by the defendant, Dr. Blaine Nease?" The jury placed a mark by "No," and six jurors signed the form.
 {¶ 18} JURY INTERROGATORY NO. 3[:] State the total amount of money for all injury you find by a preponderance of the evidence that will reasonably compensate the plaintiff, Vickie H. Lewis, for the damages which you find are the direct and proximate result of negligence by the defendant, Dr. Blaine Nease, and set forth what portion of that amount, if any, is for each of the following:
 Medical and hospital expense $ 65,789.96 Pain and suffering in the past $150,000.00 Pain and suffering in the future $ 50,000.00 Inability to perform usual activities $100,000.00 in the past Inability to perform usual activities $ 75,000.00 In the future Lost wages $ 77,000.00 Disfigurement $ 85,750.00 ___________ TOTAL: $603,539.96"
Eight jurors signed the form.
 {¶ 19} After the trial court read the jury interrogatories and answers into the record, the court thanked the jurors for their participation. The judge then indicated that he would meet with the jurors in the jury room and dismiss them from there. No one disputes that the trial court dismissed the jury before Dr. Nease's counsel discovered several alleged inconsistencies in the jury's answers to interrogatories.
 {¶ 20} Thereafter, Dr. Nease filed an objection to Lewis' proposed final judgment entry, motion for judgment notwithstanding the verdict, or, in the alternative, motion for new trial. Therein, Dr. Nease noted that, in answering Jury Interrogatory No. 1, six members of the jury specifically found that Lewis' claims of injury to her left groin, lower abdomen and left thigh were not the direct and proximate result of his negligence. Additionally, Dr. Nease noted that in responding to Jury Interrogatory No. 2, the same six jurors specifically found that the surgery performed by Dr. Steinberg was not a direct and proximate result of Dr. Nease's negligence. However, Dr. Nease noted that in Jury Interrogatory No. 3, setting forth the specific damages awards, signed by all eight jurors, the jury erroneously awarded the medical expenses associated with Dr. Steinberg's surgery, which Dr. Nease claimed to be $19,856.30. Dr. Nease also noted that the jury awarded Lewis $22,500.00 in lost wages associated with Dr. Steinberg's surgery. Accordingly, Dr. Nease sought either a judgment consistent with the answers to Jury Interrogatory No. 1 and Jury Interrogatory No. 2, or a new trial on the issue of damages pursuant to Civ.R. 49(B) on the ground that the award of damages associated with Dr. Steinberg's operation constituted plain error.
 {¶ 21} Additionally, Dr. Nease argued that Lewis failed to present the medical evidence required to establish to a reasonable degree of medical probability that she suffered any injury as a direct and proximate result of Dr. Nease's negligence that would support an award of future damages. Specifically, Dr. Nease asserted that Drs. Esham and Steinberg testified that once Lewis recovered from Dr. Esham's operation to remove the spiral tacks from her bladder, her bladder problems had resolved. Further, Dr. Nease argued that Dr. Lopez's testimony regarding Lewis' future claims related only to the injuries other than the bladder, which the jury specifically found were not the proximate result of Dr. Nease's negligence. Thus, he claimed she had no future bladder problems proximately caused by his negligence.
 {¶ 22} Based upon the alleged inconsistent answers to the jury interrogatories and the alleged lack of medical testimony to support Lewis' claim of future damages resulting from her bladder injuries, Dr. Nease sought a JNOV, pursuant to Civ.R. 50(B), reducing the jury's award by: (1) $125,000 for future pain and suffering and future inability to perform usual activities; (2) $19,856.30 for past medical expenses related to Dr. Steinberg's operation; (3) $22,500.00 for lost wages related to Dr. Steinberg's operation; and (4) $75,000.00 of the jury's award for past pain and suffering and past inability to perform usual activities he claimed were associated with Dr. Steinberg's operation.
 {¶ 23} In the alternative, Dr. Nease argued that he was entitled to a new trial pursuant to Civ.R. 59(A) based upon: (1) the jury's inconsistent answers to the interrogatories; or (2) the court's decision to permit Dr. Lopez to testify as an expert witness despite the fact that Lewis failed to identify him as such in the parties' joint pre-trial statement.
 {¶ 24} Lewis opposed Dr. Nease's motion for a judgment notwithstanding the verdict or for a new trial, arguing that: (1) the jury's answers to the interrogatories could be harmonized; (2) the jury clearly intended to award Lewis $602,539.96; and (3) Dr. Nease's counsel failed to object to the general verdict before the jury was dismissed, therefore, Dr. Nease waived any objection to the general verdict. Additionally, Lewis argued that if the court determined that the general verdict and the answers to the special interrogatories were irreconcilable, there was no basis for reducing the juror's awards for past pain and suffering, past inability to perform usual activities, future pain and suffering, and future inability to perform usual activities.
 {¶ 25} In addition to Dr. Nease's post-trial motion, Lewis filed a motion to set aside the juror's answers to Jury Interrogatory No. 1 and Jury Interrogatory No. 2, which Dr. Nease opposed.
 {¶ 26} The record reflects that the trial court conducted an oral hearing upon the parties' various motions on June 21, 2005.[2] On July 29, 2005, the trial court issued a decision and judgment entry. In that entry, the trial court restated Interrogatories Nos. 1 and 2, and the jury's respective answers reflecting that Dr. Nease's negligence did not proximately cause the injuries to Lewis' left groin, lower abdomen, and left thigh, or necessitate Dr. Steinberg's operation. The court then found that the evidence presented to the jury was clear that: (1) the medical expenses associated with Dr. Steinberg's treatment totaled $19,856.30; and (2) the lost wages associated with Dr. Steinberg's treatment totaled $22,500.00. The court then found that, in light of the jury's answers to Jury Interrogatories Nos. 1 and 2, that the jury erroneously included the medical expenses and lost wages associated with Dr. Steinberg's treatment on the verdict form. Accordingly, the trial court reduced the jury's verdict by $42,356.30.
 {¶ 27} However, the trial court found that the parties submitted no documentation to the jury on the issue of pain and suffering or inability to perform usual activities, and that those figures were based solely upon the jurors' thoughts of the case and their conclusion of the evidence. Therefore, the trial court overruled Dr. Nease's motion as it related to the reduction of the jury's award for future damages.
 {¶ 28} Based upon its finding that the jury's verdict should be reduced by the amount of the medical expenses and lost wages associated with Dr. Steinberg's operation, the trial court rendered a judgment in Lewis' favor in the amount of $561,183.66. In its final judgment entry, the court also ordered that post judgment interest begin to accrue as of March 17, 2005, the date when Lewis submitted her proposed judgment entry, rather than July 29, 2005, the date of the final judgment.
 {¶ 29} Dr. Nease timely appeals, raising the following assignments of error: I. "THE TRIAL COURT ERRED WHEN IT DISMISSED THE JURY." II. "THE TRIAL COURT ERRED IN DENYING DEFENDANT DR. NEASE'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT, OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL." III. "THE TRIAL COURT ERRED BY ALLOWING DR. LOPEZ TO TESTIFY." IV. "THE TRIAL COURT ERRED BY PERMITTING CROSS EXAMINATION OF THE DEFENDANT WITH THE ANSWER FILED BY HIS COUNSEL." V. "THE TRIAL COURT ERRED IN ADMITTING THE TESTIMONY [OF CERTAIN INDIVIDUALS] OVER TIMELY OBJECTION." VI. "THE TRIAL COURT ERRED WHEN IT ORDERED POST-JUDGMENT INTEREST TO RUN FROM THE DATE IT WAS FIRST PRESENED (sic) A PROPOSED JUDGMENT ENTRY."
 {¶ 30} Lewis also timely cross-appeals raising the following assignment of error: "The Scioto County Court of Common Pleas committed reversible error by decreasing the verdict awarded by the jury based on objections to alleged inconsistencies between the jury's answers to interrogatories and the verdict as Dr. Nease waived any objections to the inconsistencies by failing to object while the jury was still impaneled."
 II. {¶ 31} In his first assignment of error, Dr. Nease contends that the trial court committed plain error when it dismissed the jury after reading the jury's answers to the interrogatories into the record, but without affording the parties any opportunity to review the jury's answers for inconsistencies. Specifically, Dr. Nease contends that the jury's answers to the interrogatories were inconsistent in that the jury found that his negligence did not proximately cause the injury to Lewis' left groin, lower abdomen, and left thigh, or the need for Dr. Steinberg's surgery. Yet, the jury awarded Lewis all of the economic damages associated with Dr. Steinberg's surgery. Further, he argues that the inconsistency was not readily apparent when the trial judge read the jury's answers to the interrogatories into the record.
 {¶ 32} Additionally, Dr. Nease contends that, in the event that a jury's answers to interrogatories are inconsistent with the general verdict, the trial court must choose one of the courses of conduct enumerated in Civ.R. 49(B). Because the court had already dismissed the jury before the inconsistency came to light, and because the court did not have any documentation which would permit it to accurately reduce general damages, Dr. Nease claims that the only option available to the court under the Civ.R. 49(B) was to grant him a new trial. In contrast, Lewis contends that Dr. Nease waived his objection to any inconsistencies in the answers to interrogatories by failing to bring them to the trial court's attention before the court dismissed the jury.
 {¶ 33} The underlying purpose of jury interrogatories is to "test the correctness of a general verdict by eliciting from the jury its assessment of the determinative issues presented by a given controversy in the context of evidence presented at trial."Cincinnati Riverfront Coliseum, Inc. v. McNulty Co. (1986),28 Ohio St.3d 333, 337. Civ.R. 49(B) provides, in relevant part: "When the general verdict and the answers are consistent, the appropriate judgment upon the verdict and answers [to written interrogatories] shall be entered pursuant to Rule 58. When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial."
 {¶ 34} It is axiomatic that a litigant's failure to raise an issue in the trial court waives the litigant's right to raise that issue on appeal. Shover v. Cordis Corp. (1991),61 Ohio St.3d 213, 220, overruled on other grounds by Collins v. Sotka
(1998), 81 Ohio St.3d 506. We will not consider any error a party failed to bring to the trial court's attention at a time when the trial court could have avoided or corrected the error. Schade v.Carnegie Body Co. (1982), 70 Ohio St.2d 207, 210, State v.Glaros (1960), 170 Ohio St. 471, 166 N.E.2d 379, paragraph one of the syllabus.
 {¶ 35} Moreover, the Ohio Supreme Court has recognized that an objection to inconsistent answers to jury interrogatories is waived unless the party raises it before the jury is discharged.O'Connell v. Chesapeake Ohio R. Co. (1991),58 Ohio St.3d 226, 229. (Citations omitted.) This rule recognizes that a court can only exercise the full range of available remedies while the jury is still impaneled. Shoemaker v. Crawford (1991),78 Ohio App.3d 53, 61. The purpose of this rule is twofold: (1) it "`promote[s] the efficiency of trials by permitting reconciliation of inconsistencies without the need for a new presentation of the evidence to a different trier[,]'"O'Connell at 229, quoting Haehnlein v. Henry (1987),41 Ohio App.3d 233, 234; and (2) it serves to prevent jury shopping by litigants who wait to voice their objections to inconsistencies until after the original jury is discharged. Haehnlein at 234.
 {¶ 36} Dr. Nease contends that he did not waive his objections to any inconsistencies in the jury's answers to the interrogatories because the trial court did not afford him or his counsel any opportunity to review the written answers to the interrogatories before dismissing the jury. Dr. Nease argues that pursuant to the Eighth Appellate District's holding in Lessmanv. Denny's, Inc. (July 6, 2000), Cuyahoga App. No. 75044, there can be no waiver of a party's objections to inconsistent interrogatory answers where the trial court dismisses the jury without giving the parties an opportunity to state their objections on the record. However, we note that the Fifth Appellate District has held that counsel has an affirmative duty to ask to see the interrogatory answers before the trial court dismisses the jury, and that the failure to do so results in the waiver of all but plain error. Leavers v. Conrad (2004),156 Ohio App.3d 286, ¶ 71.
 {¶ 37} Dr. Nease cites no statute or rule that specifically requires a trial court to provide parties with copies of the jury's answers to the interrogatories before it reads the verdict into the record, or to specifically ask the parties if they have any objections to the answers before dismissing the jury. Moreover, we conclude that judicial recognition of such a requirement would not further the dual underlying purposes of the waiver rule to promote the efficiency of trials and prevent jury shopping. Therefore, we agree with the Fifth Appellate District's holding in Leavers, and hold that if the court does not specifically invite the parties to view the jury's answers to the interrogatories or state their objections to those answers upon the record, counsel has an affirmative duty to speak up and request the opportunity to do so. Dr. Nease clearly did not request the opportunity to review the jury's answers to interrogatories or object to the alleged inconsistencies in those answers before the trial court dismissed the jury. Accordingly, he waived all but plain error with regard to any inconsistencies in the jury's answers to the interrogatories.
 {¶ 38} The Ohio Supreme Court has previously stated, "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, syllabus.
 {¶ 39} The Goldfuss court went on to state: "While invocation of the plain error doctrine is often justified in order to promote public confidence in the judicial process, `[it is doubtful that] the public's confidence in the jury system is undermined by requiring parties to live with the results of errors that they invited, even if the errors go to "crucial matters." In fact, the idea that parties must bear the cost of their own mistakes at trial is a central presupposition of our adversarial system of justice.'" Goldfuss, at 121-122, quotingMontalvo v. Lapez (1994), 77 Hawaii 282, 305, 884 P.2d 345, 368
(Nakayama, J., concurring in part and dissenting in part).
 {¶ 40} Dr. Nease contends that the inconsistencies in the jury's answers to interrogatories constitute plain error, because, like the inconsistencies in O'Connell, supra, the inconsistencies here were not readily apparent. He argues that he could not reasonably have discovered them before the trial court dismissed the jury. Therefore, he urges us to find that the inconsistencies in the jury's answers to the interrogatories rise to the level of plain error.
 {¶ 41} In O'Connell, supra, the jury verdict contained inconsistencies related to the participation of two jurors in the apportionment of fault, when those particular jurors did not find any causal negligence on the part of one or both of the parties in the answers to separate interrogatories. O'Connell at 230. While the requisite number of jurors signed each interrogatory, the O'Connell court noted that "there was little chance of discovering the inconsistencies without a protracted examination and comparison of the interrogatory forms themselves." Id. at 229. Therefore, the O'Connell court found that the appellant did not waive her challenges to the jury's answers by failing to raise them before the court dismissed the jury. Id. Additionally, the court found that the inconsistency in permitting a juror who initially found a defendant had not acted causally negligently to then apportion fault to that party was "tantamount to plain error."
 {¶ 42} Here, the alleged inconsistencies in the jury's answers to the interrogatories were not immediately obvious to the trial court. However, Dr. Nease's own arguments reveal that at least some of the inconsistencies were readily apparent to his counsel upon a quick inspection of the completed interrogatory forms.
 {¶ 43} In trial counsel's affidavit in support of Dr. Nease's post-trial motions, counsel stated: "After the jury was discharged, undersigned counsel had her first opportunity to actually see the verdict form and interrogatory answers. In review of the damages the jury awarded, it appeared to be that the jury awarded medical expenses, lost wages and other damages not consistent with the answers to Jury Interrogatory No. 1 and Jury Interrogatory No. 2." Counsel's affidavit further demonstrated that the inconsistencies were easily identifiable, in that she discovered the inconsistencies before she or opposing counsel even departed the courtroom. Thus, if counsel had requested an opportunity to review the interrogatory answers before the court dismissed the jury, the inconsistencies would clearly have come to light in time to permit the court to exercise the full range of options available to it under Civ.R. 49(B). Therefore, we find the facts of this case readily distinguishable from those of O'Connell.
 {¶ 44} The alleged inconsistencies in the jury's answers to interrogatories may have prejudiced Dr. Nease. However, we decline to find that his counsel's failure to request the opportunity to review the jury's answers to the interrogatories before the court dismissed the jury rises to the level of an "exceptional circumstance" that would justify the application of the plain error doctrine to relieve him of that burden. Accordingly, we overrule Dr. Nease's first assignment of error.
 III. {¶ 45} In her sole assignment of error, Lewis contends that because Dr. Nease waived his objections to any inconsistencies in the jury's answers to interrogatories by failing to raise those objections before the trial court dismissed the jury, the trial court erred by reducing the jury's verdict in an effort to reconcile the jury's answers to Interrogatories Nos. 1, 2 and 3.
 {¶ 46} When a general verdict and the jury's answers to interrogatories are consistent, Civ.R.49 (B) requires a court to enter the appropriate judgment upon the verdict pursuant to Civ.R. 58. However, when one or more of the answers to interrogatories is inconsistent with the general verdict, a trial court has the inherent authority under Civ.R. 49(B) to disregard the general verdict and render final judgment in accordance with the answers, whether or not the parties challenged the verdict.Bicudo v. Lexford Properties, Inc., 157 Ohio App.3d 509,2004-Ohio-3202, at ¶ 48 and ¶ 51. But, before a trial court may disregard the general verdict and render judgment in accordance with the answers to interrogatories, a trial court has a duty to reconcile the jury interrogatories and the general verdict if it is reasonably possible to do so. Bicudo at 68, citing Tasin v.SIFCO Industries, Inc. (1990), 50 Ohio St.3d 102, paragraph one of the syllabus. See also, Klever v. Reid Bros. Exp. (1949),151 Ohio St. 467, paragraph one of the syllabus; Altvater v.Claycraft Co. (1994), 92 Ohio App.3d 759, 764.
 {¶ 47} The court should make every reasonable effort to reconcile the jury's answers to the interrogatories with the general verdict. In doing so, the court must consider all of the interrogatories and answers as a whole, and indulge any reasonable hypothesis that will reconcile the interrogatory answers with the general verdict. Klever at 474; Gregg v.Kroger Co. (Apr. 19, 1991), Champaign App. No. 90CA12; PPGIndustries, Inc. v. Heritage Fireplace Equip. (March 27, 1985), Summit App. No. 11695, citing David v. Turner (1903),69 Ohio St. 101, 118.
 {¶ 48} In reviewing a trial court's resolution of alleged inconsistencies in a jury's answers to interrogatories, we must "analyze all of the questions and answers in the light of the totality of the circumstances" and determine whether the trial court reasonably interpreted such answers in order to reconcile them with the general verdict. Larch v. City of Athens (Dec. 12, 1978), Athens App. No. CA-954. We review a trial court's efforts to reconcile interrogatory answers with the general verdict for abuse of discretion. Bicudo at ¶ 68, citing Tasin
at paragraph one of the syllabus. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 49} Here, the trial court exercised its independent authority in accordance with Civ.R. 49(B) and Bicudo, supra, to review and reconcile the jury's answers to interrogatories. In exercising that authority, it determined that the answers were inconsistent with each other and with the general verdict in Lewis' favor. Specifically, the court found that:
 {¶ 50} "[T]he jury was presented with medical expenses and hospital expenses of $65,789.96. Within the documents provided to the jury as well as the statements of counsel, the medical and hospital expenses were separated by date and the physician performing the services. The evidence presented to the jury was clear that the medical expenses associated with the treatment provided by Dr. Steven Steinberg was (sic) $19,856.30.[3]
The evidence presented to the jury was also clear that the plaintiff lost wages associated with the treatment of Dr. Steven Steinberg was $22,500.00.
 {¶ 51} "From the evidence presented to this Court and to the jury, this Court finds that, in light of the jury's answer to interrogatory numbers 1 and 2, the jury erroneously included the medical expenses and lost wages associated with the treatment of Dr. Steven Steinberg in jury interrogatory number 3 and on the verdict form. This court finds that the sum of $19,856.30 should be deducted from the jury's determination as it relates to medical expenses and the sum of $22,500.00 should be deducted from the jury's determination of lost wages for a total deduction of $42,356.30."
 {¶ 52} In its effort to reconcile the jury's answers to the interrogatories with each other and the general verdict, the court speculated that the jury erroneously included the damages associated with Dr. Steinberg's surgery in its answer to Interrogatory No. 3, based upon the jury's finding in Interrogatory No. 2 that Dr. Nease's negligence did not proximately cause Dr. Steinberg's surgery. Then, the court endeavored to modify the jury's award of damages in an effort to harmonize the amount of damages with the jury's answers to Interrogatories No. 1 and 2. Thus, in its effort to harmonize the jury's interrogatory answers with the general verdict, the trial court unilaterally reduced the jury's award of damages by $42,356.30.
 {¶ 53} However, "[i]n Ohio, it has long been held that the assessment of damages is so thoroughly within the province of the jury that a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive."Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638,635 N.E.2d 331, citing Toledo, Columbus Ohio River RR. Co. v.Miller (1923), 108 Ohio St. 388, 402-403, 140 N.E. 617. When a court deems a damage award excessive in an action for unliquidated damages, but determines that it is not the result of passion or prejudice, a trial court has the power to render judgment for an amount less than the jury's verdict only with the consent of the prevailing party. Wightman v. Consol. Rail Corp.
(1999), 86 Ohio St.3d 431, 444. A plaintiff accepts this reduction of her damage award, or remittitur, in lieu of a new trial. Id. The essence of remittitur is that the plaintiff voluntarily gives back, or remits, part of the damages awarded by the jury in order to avoid a new trial. Iron R. Co. v. Mowery
(1881), 36 Ohio St. 418, 423. Here, however, the trial court did not give Lewis the opportunity to consent to the trial court's reduction of the jury's damage award. Thus, we find that the trial court abused its discretion in modifying the amount of Lewis' judgment in its effort to reconcile the inconsistencies in the jury's answers to the interrogatories. Accordingly, we sustain Lewis' sole assignment of error.
 IV. {¶ 54} In his third assignment of error, Dr. Nease contends that the trial court erred in permitting Dr. Lopez, one of Lewis' treating physicians, to testify at trial. Dr. Nease argues that Lewis failed to identify Dr. Lopez as an expert witness in the parties' January 12, 2005 joint pre-trial statement, and that her delayed disclosure surprised and unfairly prejudiced him by depriving him of the opportunity to depose Dr. Lopez before trial. Additionally, Dr. Nease asserts that Dr. Lopez was not qualified to testify as an expert at trial, and that the trial court committed reversible error in overruling his objection to Dr. Lopez's testimony regarding the proximate cause of Lewis' pain near her inguinal canal and down the inner part of her left thigh.
 {¶ 55} A trial court has broad discretion in the admission or exclusion of evidence. Urbana ex rel. Newlin v. Downing (1989),43 Ohio St.3d 109, 113. So long as a trial court exercises its discretion in accordance with the rules of procedure and evidence, a reviewing court will not reverse that judgment absent a clear showing of an abuse of discretion with attendant material prejudice. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271;State v. Hymore (1967), 9 Ohio St.2d 122. Thus, we review a trial court's decision regarding the admission or exclusion of expert witness testimony under an abuse of discretion standard.Am. Select Ins. Co. v. Sunnycalb, Warren App. No. CA2005-02-018, 2005-Ohio-6275, ¶ 14, citing Huffman v. HairSurgeon, Inc. (1985), 19 Ohio St.3d 83, 86.
 {¶ 56} Here, the trial court issued a pre-trial order setting forth deadlines for the disclosure of expert witnesses, discovery cutoff, submission of a joint pre-trial statement and the exchange of trial materials. The order provided that failure to include any of the specified material "may result in the imposition of appropriate sanctions, including exclusion of testimony [or] exhibits, denial of claims, directed verdicts, dismissal of the case, or contempt of Court." (Emphasis added.)
 {¶ 57} In its judgment entry denying Dr. Nease's motion to exclude the testimony of Dr. Lopez, the trial court specifically noted that Lewis identified Dr. Lopez as an expert witness in her June 2004 expert witness disclosure, and that its pre-trial order set January 15, 2005 as the discovery cutoff date. Based upon these findings, the trial court could reasonably have concluded that it was Dr. Nease's own lack of diligence that prevented him from deposing Dr. Lopez before trial — not Lewis' failure to re-disclose Dr. Lopez as an expert witness in the joint pre-trial statement submitted to the court just three days before the discovery cutoff. Thus, we cannot find that the trial court abused its discretion by permitting Dr. Lopez to testify as an expert witness based upon Lewis' failure to list him as an expert witness in the joint pre-trial statement.
 {¶ 58} Dr. Nease also contends that, pursuant to Civ.R. 702, Dr. Lopez was not qualified to give the expert opinions he gave at trial, and, therefore, the trial court committed reversible error by overruling his objection to Dr. Lopez's testimony regarding the "proximate cause issue[.]"
 {¶ 59} Pursuant to Evid.R. 104(A), a trial court determines whether a witness qualifies as an expert. A reviewing court will not overturn that determination unless there is a showing that the trial court abused its discretion. State v. Thomas,97 Ohio St.3d 309, 2002-Ohio-6624, ¶ 46, citing State v. Hartman,93 Ohio St.3d 274, at 285, 2001-Ohio-1580; State v. Williams
(1983), 4 Ohio St.3d 53, 58.
 {¶ 60} Evid.R. 702 provides, in relevant part: "A witness may testify as an expert if all of the following apply: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable scientific, technical, or other specialized information."
 {¶ 61} "As a prerequisite to testifying, the expert must be sufficiently qualified, that is, it must appear that his opinion is based upon some superior knowledge not possessed by ordinary jurors." State Auto. Mut. Ins. Co. v. Chrysler Corp. (1973),36 Ohio St.2d 151, 159-160. (Citations omitted.) The Ohio Supreme Court has recognized that: "It is a general rule that the expert witness is not required to be the best witness on the subject. * * *. The test is whether a particular witness offered as an expert will aid the trier of fact in the search for the truth."Alexander v. Mt. Carmel Med. Ctr. (1978), 56 Ohio St.2d 155,159. (Citations omitted.)
 {¶ 62} Although Dr. Nease contends that Dr. Lopez was not qualified to testify as an expert, we note that he fails to make any argument explaining exactly why he believes that Dr. Lopez is not qualified. Nor does Dr. Nease cite any legal authority in support of his argument. Moreover, our review of the record reflects that there was some evidence in the record upon which the trial court could reasonably have concluded that Dr. Lopez was qualified to testify as an expert. Specifically, we note that Dr. Lopez testified that he began performing gynecologic laparoscopic surgical procedures in 1985 or 1986, and that he has performed three to four such procedures a week since that time. He further testified that, in his training as a laparoscopic surgeon, he had received specific training to avoid the recognized potential for nerve injuries and to take reasonable steps to avoid such injuries. Thus, we cannot find that the trial court abused its discretion by finding Dr. Lopez was qualified to testify as an expert regarding a nerve injury during the laparoscopic repair of an inguinal hernia. Accordingly, we overrule Dr. Nease's third assignment of error.
 V. {¶ 63} In his second assignment of error, Dr. Nease contends that the trial court erred in denying his motion for JNOV, or alternatively, his motion for new trial.
 A. {¶ 64} A motion for JNOV under Civ.R. 50(B) tests the legal sufficiency of the evidence. See, e.g., Texler v. D.O. SummersCleaners (1998), 81 Ohio St.3d 677, 679; McKenney v. HillsideDairy Co. (1996), 109 Ohio App.3d 164, 176. The standard for granting JNOV is the same as that for granting a directed verdict under Civ.R. 50(A). Mantua Mfg. Co. V. Commerce Exchange Bank
(1996), 75 Ohio St.3d 1, 4; Gallagher v. Cleveland BrownsFootball Co. (1996), 74 Ohio St.3d 427, 435; Posin v. A.B.C.Motor Court Hotel (1976), 45 Ohio St.2d 271, 275. Thus, a trial court must construe the evidence most strongly in favor of the non-moving party and deny the motion where there is some evidence to support the non-moving party's case. See generally, Texler,
supra at 679; Gladon v. Greater Cleveland Regional TransitAuth. (1996), 75 Ohio St.3d 312, 318; Posin, supra at 275. In doing so, a trial court may not weigh the evidence or judge the credibility of witnesses. Osler v. Lorain (1986),28 Ohio St.3d 345, syllabus; Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 67-68. A trial court should deny a motion for JNOV if there is substantial evidence upon which reasonable minds could come to different conclusions on the essential elements of the claim. Ramage v. Cent. Ohio Emergency Serv., Inc. (1992),64 Ohio St.3d 97, 109; Posin, supra at 275.
 {¶ 65} In the context of a medical malpractice action, JNOV is appropriate when the plaintiff fails to present competent expert testimony based upon a reasonable medical probability that the negligent acts of a physician were the direct and proximate cause of the patient's injury. Ramage, at paragraph four of the syllabus. (Citations omitted.) At a minimum, a plaintiff must present evidence that the injury was more likely than not caused by the defendant's negligence. See Cooper v. Sisters of Charity
(1971), 27 Ohio St.2d 242, 252, overruled on other grounds byRoberts v. Ohio Permanente Med. Group, Inc. (1996),76 Ohio St.3d 483.
 {¶ 66} The decision to grant or deny a motion for JNOV is a question of law. Ruta, supra at 68-69. We review questions of law de novo. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm,73 Ohio St.3d 107, 108, 1995-Ohio-214.
 {¶ 67} Here, Dr. Nease contends that the trial court should have granted his motion for JNOV based upon the alleged inconsistencies in the jury's answers to interrogatories, and the absence of any evidence tending to establish that Lewis would suffer future damages as a direct and proximate result of Dr. Nease's negligence. Specifically, Dr. Nease contends: (1) the jury found that Dr. Nease's negligence did not proximately cause "injury to [Lewis'] left groin, lower abdomen, and left thigh[;]" and (2) Lewis failed to present any medical evidence to establish to a reasonable degree of medical probability that she has any future damages related to her bladder injury. Because he contends that the evidence demonstrates that Lewis' bladder injury has fully resolved, Dr. Nease argues Lewis presented no evidence of any ongoing injury, proximately caused by his negligence, that would justify an award of future damages.
 {¶ 68} As we have already stated, a motion for JNOV tests the legal sufficiency of the evidence. Therefore, any inconsistencies in the jury's answers to interrogatories are irrelevant to our analysis. Instead, our inquiry focuses upon whether Lewis presented competent expert testimony based upon a reasonable medical probability that Dr. Nease's negligence proximately caused her injuries and damages. Ramage, supra, at paragraph four of the syllabus.
 {¶ 69} Despite Dr. Nease's arguments, our review of the record reveals that Dr. Lopez testified that, in his opinion and to a reasonable degree of medical probability, the pain and numbness in Lewis' left groin and thigh was the result of ilioinguinal nerve entrapment that occurred as a result of the hernia surgery performed by Dr. Nease. Dr. Lopez also expressed his professional medical opinion that it would be "unusual" for an injury like Lewis' to occur without negligence. Further, Dr. Lopez testified that he believed to a reasonable degree of medical probability that Lewis' pain is permanent.
 {¶ 70} Thus, construing the evidence most strongly in Lewis' favor, Lewis presented some evidence from which the jury could reasonably conclude that Lewis suffered an injury to her left groin and/or thigh as a proximate result of Dr. Nease's negligence, and that she would continue to have pain as a result of the injury or injuries. Therefore, we conclude that the trial court did not err in overruling Dr. Nease's motion for JNOV.
 B. {¶ 71} Next, Dr. Nease contends that the trial court erred in overruling his motion for a new trial pursuant to Civ.R. 59(A). Specifically he contends that he is entitled to a new trial pursuant to the grounds enumerated in Civ.R. 59(A)(1), (3), (6) and (7).
 {¶ 72} Civ.R. 59(A) provides, in relevant part: "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds: (1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial; * * * (3) Accident or surprise which ordinary prudence could not have guarded against; * * * (6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case; (7) The judgment is contrary to law; * * *."
 {¶ 73} Where a trial court is authorized to grant a new trial for a reason which requires the exercise of sound discretion, we may only reverse a trial court's judgment denying a new trial for abuse of discretion. Rohde v. Farmer (1970), 23 Ohio St.2d 82, paragraph one of the syllabus. Thus, we review the trial court's denial of Dr. Nease's motion for a new trial pursuant to Civ.R. 59(A)(1), (3) and (6) for abuse of discretion. As we have previously stated, the term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore, supra, at 219.
 {¶ 74} Here, Dr. Nease contends that the trial court abused its discretion in failing to grant him a new trial pursuant to Civ.R. 59(A)(1), (3), and (6) based upon his assertion that the trial court erred in permitting Dr. Lopez to testify. Specifically, Dr. Nease contends that Lewis' failure to identify Dr. Lopez as an expert witness in the joint pre-trial constituted an irregularity in the proceeding, and that he was surprised because the court permitted Dr. Lopez to testify despite the lack of timely disclosure. Additionally, Dr. Nease contends that the erroneously admitted testimony of Dr. Lopez's was the only medical evidence Lewis presented that tended to demonstrate that she will suffer future pain and suffering, or future inability to perform usual activities as the result of Dr. Nease's negligence.
 {¶ 75} However, as we found in our disposition of Dr. Nease's third assignment of error, the trial court did not abuse its discretion in permitting Dr. Lopez to testify. Accordingly, we cannot find that the trial court abused its discretion in denying Dr. Nease's motion for a new trial for reasons based upon the trial court's decision to admit Dr. Lopez's testimony.
 {¶ 76} Where the grant or denial of a motion for a new trial rests upon the trial court's resolution of a question of law, we review the trial court's decision de novo. Rohde, at paragraph two of the syllabus. Thus, we review Dr. Nease's motion for new trial pursuant to Civ.R. 59(A)(7) de novo. See, e.g., Wright v.Suzuki Motor Corp., Meigs App. Nos. No. 03CA2, 03CA3, 03CA4,2005-Ohio-3494, at ¶ 128. Dr. Nease contends that the trial court's judgment is contrary to law because: (1) it awards damages for future pain and suffering and future inability to perform usual activities without proof thereof; and (2) because the jury's award of those damages is inconsistent with the jury's answer to interrogatories. Although Dr. Nease does not offer any explanation with regard to his allegation that the trial court's judgment awards future damages without proof thereof, we presume his argument again relies upon his contention that the trial court erroneously permitted Dr. Lopez to testify. Because we have already determined that the court did not abuse its discretion in permitting Dr. Lopez to testify, and Dr. Nease waived the right to challenge any inconsistencies in the jury's answers to interrogatories by failing to bring them to the court's attention before it dismissed the jury, we cannot find that the trial court erred as a matter of law in refusing to grant Dr. Nease's motion for a new trial pursuant to Civ.R. 59(A)(7).
 C. {¶ 77} Because we find that the trial court did not err in denying Dr. Nease's motion for JNOV or his motion for a new trial, we overrule Dr. Nease's second assignment of error.
 VI. {¶ 78} In his fourth assignment of error, Dr. Nease contends that, under Civ.R. 8(G), the trial court erred by permitting Lewis' counsel to cross-examine him with the answer his counsel filed in response to Lewis' complaint.
 {¶ 79} Civ.R. 8(G) provides that: "Pleadings shall not be read or submitted to the jury, except insofar as a pleading or portion thereof is used in evidence." The staff notes from the time of the rule's adoption indicate that the rule "was added in order to emphasize that, except on rare occasions, the pleadings in the action shall not be a matter of jury concern."
 {¶ 80} Evid.R. 611(B), regarding the scope of cross-examination, provides that: "Cross-examination shall be permitted on all relevant matters and matters affecting credibility." The scope of cross-examination and the admissibility of evidence during cross-examination rest within the sound discretion of the trial court. O'Brien v. Angley
(1980), 63 Ohio St.2d 159, 163. Thus, we will not reverse a trial court's decision to admit or exclude evidence upon cross-examination, unless there has been a clear and prejudicial abuse of discretion. Id. (Citations omitted.)
 {¶ 81} Here, the trial court permitted Lewis' counsel to cross-examine Dr. Nease regarding the statements contained in his answer to Lewis' complaint. Specifically, counsel sought to elicit testimony from Dr. Nease regarding the statements in his answer that denied that: (1) his conduct was in any respect negligent or below accepted standards of care; and (2) his conduct caused or contributed to cause Lewis' injuries or damages. Lewis asserts that the purpose of this line of questioning was to impeach Dr. Nease's testimony that he never denied responsibility for his negligence, and the statements of Dr. Nease's counsel to the effect that Dr. Nease "owned up to" his negligence before Lewis ever filed suit. Dr. Nease contends that the trial court's decision to permit Lewis' counsel to cross-examine him about the denial of negligence contained in his answer prejudiced him by confusing the jury. Specifically, he argues that the confusion caused by the cross-examination caused the jury to give inconsistent answers to the interrogatories.
 {¶ 82} Despite Dr. Nease's argument, we fail to see how the jury's knowledge that Dr. Nease and/or his counsel initially denied all negligence in the answer could possibly have caused the alleged inconsistencies in the jury's answers to interrogatories. Because we find that Dr. Nease has failed to demonstrate how the trial court's decision to permit the cross-examination prejudiced him, we conclude that any error in permitting that line of questioning constitutes nothing more than harmless error. See, Civ.R. 61. Accordingly, we overrule Dr. Nease's fourth assignment of error.
 VII. {¶ 83} In his fifth assignment of error, Dr. Nease contends that the trial court erred in admitting the lay opinion testimony of various witnesses over his objection. Specifically, Dr. Nease contends that the trial court erred in admitting: (1) Dr. Lopez's entire testimony; (2) Mrs. Lewis' lay opinion testimony regarding the medical expenses she incurred as a result of Dr. Nease's negligence; (3) Dr. Esham's lay opinion testimony regarding his belief that Lewis suffered depression as a result of the complications of her hernia surgery; and (4) the testimony of Lewis, her husband, friends, supervisor, and Dr. Lopez regarding their observations of Lewis' pain and suffering.
 {¶ 84} As we have already stated, a trial court has broad discretion in the admission or exclusion of evidence. Urbana exrel. Newlin v. Downing (1989), 43 Ohio St.3d 109, 113. So long as a trial court exercises its discretion in accordance with the rules of procedure and evidence, a reviewing court will not reverse that judgment absent a clear showing of an abuse of discretion with attendant material prejudice. Rigby v. LakeCty. (1991), 58 Ohio St.3d 269, 271; State v. Hymore (1967),9 Ohio St.2d 122.
 {¶ 85} Here, Dr. Nease's argument in support of his assignment of error merely repeats portions of the challenged testimony, and states that, in Dr. Nease's opinion, the trial court should have excluded the testimony for various reasons. While Dr. Nease does cite various evidence rules in support of some of his arguments, he does not explain how they apply to the testimony at issue, nor does he cite any caselaw or statutes to support his various arguments. A party's failure to cite caselaw or statutes in support of an argument, as required by App.R. 16(A)(7), is sufficient grounds to disregard that argument entirely under App.R. 12(A)(2). See ¶ 109. Accordingly, we decline to address Dr. Nease's fifth assignment of error.
 VIII. {¶ 86} In his sixth assignment of error, Dr. Nease contends that the trial court erred by ordering him to pay post-judgment interest from the date that Lewis first presented her proposed judgment entry to the court, rather than the date that the trial court actually entered its judgment.
 {¶ 87} R.C. 1343.03 grants a prevailing party a right to post-judgment interest as a matter of law. State ex rel. Shimolav. Cleveland (1994), 70 Ohio St.3d 110, 112, citing Testa v.Roberts (1988), 44 Ohio App.3d 161, 542 N.E.2d 654. The statute specifies, in relevant part, that except in limited circumstances not applicable here, "* * * interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct * * * shall be computed from the date the judgment, decree, or order is rendered to the date on which the money is paid * * *." R.C. 1343.03(B).
 {¶ 88} Lewis contends that pursuant to the holding in GMACMortg. Corp. v. Titch, Medina App. No. 04CA0012-M,2005-Ohio-868, a court may award post-judgment interest from the date of the jury verdict. In GMAC, the appellant argued that the trial court improperly calculated post-judgment interest from the date of the jury verdict in December 2001, rather than the date that attorney fees were calculated in January 2004. Id. at ¶ 37. However, in that case, it appears that the jury rendered its verdict on December 7, 2001, and that the trial court entered a judgment on that verdict on December 13, 2001. Id. at ¶ 40. Yet, the calculation of attorney fees remained pending after the trial court entered that judgment. Id. at ¶ 7 and ¶ 37. The facts of this case are readily distinguishable in that the jury rendered its verdict on February 28, 2005, but the trial court did not enter a judgment on that verdict until July 29, 2005. Thus, unlike the situation in GMAC, the trial court did not contemporaneously reduce the jury's damage award to a judgment.
 {¶ 89} The Ohio Supreme Court has clearly and repeatedly indicated that a "court speaks through its journal and a judgment is not rendered until it is reduced to a journal entry." In rePetition for Inquiry Into Certain Practices (1948),150 Ohio St. 393, 398. See, also, Gaskins v. Shiplevy (1996),76 Ohio St.3d 380, 382; State ex rel. Fogle v. Steiner (1995),74 Ohio St.3d 158, 163; Andrews v. Bd. of Liquor Control (1955),164 Ohio St. 275, paragraph three of the syllabus.
 {¶ 90} Here, the trial court did not enter a judgment in Lewis' favor until July 29, 2005. Thus, as a matter of law, post-judgment interest could not begin to accrue until July 29, 2005. Accordingly, we sustain Dr. Nease's sixth assignment of error.
 IX. {¶ 91} In conclusion, we overrule Dr. Nease's first, second, third, and fourth assignments of error. We decline to address his fifth assignment of error, and we sustain his sixth assignment of error. Additionally, we sustain Lewis' sole assignment of error. Accordingly, we affirm the trial court's judgment in part, reverse it in part and remand this cause for further proceedings consistent with this decision.
Judgment affirmed in part reversed in part and causeremanded.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, and the cause remanded to the trial court for further proceedings consistent with this opinion, and Appellee and Appellant share equally in the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, P.J.: Concurs in Judgment and Opinion as to Assignments of Error 3 6; Concurs in Judgment Only as to Assignments of Error 1, 2, 4 5; Dissents as to the Cross-Appeal.
Abele, J.: Concurs in Judgment Only.
[2] The record does not contain a transcript of that hearing.
[3] Although the court indicates that the jury was presented with a document or documents separating Lewis' medical and hospital expenses by date and physician performing the services, and that the document clearly reflects that $19,856.30 of Lewis' medical expenses were associated with Dr. Steinberg's surgery, we note that the record before this court contains no such document. The only document in the record before this court breaking down Lewis' medical expenses is Plaintiff's Exhibit 2, which reflects that Lewis incurred an expense of $1960.00 attributable to Dr. Steven Steinberg, M.D.