{¶ 1} Appellant, Catherine Roscoe-Herbert, appeals the decision of the Cuyahoga County Court of Common Pleas that denied her motion for judgment notwithstanding the verdict or a new trial. For the reasons stated herein, we affirm the judgment of the trial court.
 {¶ 2} Roscoe-Herbert filed this action on August 6, 2004, alleging she had been injured in a motor vehicle accident caused by appellee, Natalie Fabian. The matter proceeded to a jury trial on October 13, 2005.
 {¶ 3} The testimony introduced at trial established that the accident occurred on July 20, 2003. Roscoe-Herbert was driving from Beachwood Mall and heading to the post office. She was stopped at a red light with several cars in front of her. Fabian was stopped behind her. As the light turned green and the traffic began to move, Fabian picked her foot up off the brake and her vehicle began to creep forward. She had not hit the accelerator. At this time, Fabian knocked her cell phone to the floor and looked down to pick it up. When Fabian looked back up, she noticed the vehicle in front of her had stopped again. Fabian went to hit her brakes, but it was too late and she hit Roscoe-Herbert's vehicle. Fabian described the impact as "a light impact" and "more like a tap."
 {¶ 4} At trial, Roscoe-Herbert claimed that the impact of the crash caused her to bounce up in the car, hit her head on the roof, come down and twist, and fall forward with her chest onto the steering wheel. She also claimed she felt the car *Page 4 
"drop." She claimed she had a headache and a sharp shooting pain in her right hip down to her knee.
 {¶ 5} The evidence established that neither vehicle sustained much damage. The police report also did not indicate any injury and was marked as property damage only. Roscoe-Herbert declined an ambulance. She had no visible signs of injury. She proceeded to the post office before going home.
 {¶ 6} Later that day, Roscoe-Herbert went to the hospital. Her X-rays were negative and showed normal alignment of the spine. She was treated and diagnosed with sciatica and lower back pain. She was then discharged in "improved condition" with instructions to follow up with her family physician in two to three days if not significantly improving. Her discharge instructions included "bed rest for three days." She was also prescribed medication.
 {¶ 7} Roscoe-Herbert followed up with a family physician, Dr. Barbara Vizy, on July 23, 2003. Roscoe-Herbert complained of low back pain that radiated down her leg. She was diagnosed with a lumbar strain, referred to physical therapy, and prescribed medication. She canceled her next appointment with her primary care physician, Dr. Richard Weinberger, because she went on a trip to New Orleans, where her daughter was receiving an award.
 {¶ 8} Over the next several months, Roscoe-Herbert continued with visits to Dr. Weinberger and his associate, Dr. Vizy. She also saw her physical therapist, Michael Supler. At some point, Dr. Weinberger ordered an MRI that revealed *Page 5 
Roscoe-Herbert had two mildly bulging disks, the cause being unknown and possibly due to degenerative changes. Roscoe-Herbert was referred to an orthopedic surgeon, Dr. Christopher Furey. Dr. Furey diagnosed Roscoe-Herbert with a lower back strain and opined that the injury was sustained in the motor vehicle accident in July 2003. He noted that there was no evidence of nerve compression on the MRI to explain her leg symptoms.
 {¶ 9} Roscoe-Herbert then was referred to a neurologist, Dr. Barbara Shapiro. Dr. Shapiro's examination revealed Roscoe-Herbert had a decreased pinprick sensation of the sole of the right foot and the lateral toes, extending in a strip up the posterior leg. Dr. Shapiro also opined that Roscoe-Herbert's injuries were sustained in the motor vehicle accident in July 2003. Dr. Shapiro issued a letter to Roscoe-Herbert's employer, indicating she should remain off duty until December 1, 2003.
 {¶ 10} There was evidence that Roscoe-Herbert did not fully disclose her prior history of similar symptoms to the treating doctors. Roscoe-Herbert claimed she incurred $3,967.64 in medical bills and $15,430 in lost wages as a result of the accident.
 {¶ 11} Roscoe-Herbert conceded that she had been in a prior motor vehicle accident in 1978, in which she claimed to have had similar symptoms but "not quite as severe." She stated she had recovered from the low back injury sustained in 1978. However, her medical records actually revealed that she had "recurrent symptoms in the low back region with occasional radiation in the right leg over the *Page 6 
years," something which Roscoe-Herbert denied.
 {¶ 12} Roscoe-Herbert also claimed to have suffered from an occasional low back strain around 1987 when she worked as an operating room nurse and had to stand for long periods of time and lift heavy instrumentation. At that time, Roscoe-Herbert was diagnosed with some mild degree of arthritis in her lower back and received physical therapy treatment, which she claimed resolved the problem.
 {¶ 13} Roscoe-Herbert testified that she did not experience low back burning prior to the 2003 accident that occurred in this case. She stated that she was not experiencing any problems with her lower back leading up to the July 2003 accident and was exercising four days a week.
 {¶ 14} On cross-examination it was revealed that Roscoe-Herbert had been in other motor vehicle accidents in November 1986 and in September 1994. She also had a slip-and-fall that occurred in March 2002. Roscoe-Herbert stated that the injuries sustained in those prior motor vehicle accidents were cervical but that she had some early spasm in the mid-back.
 {¶ 15} After several evasive responses to questions concerning the 1986 accident, Roscoe-Herbert conceded that she suffered back pain from that accident. The medical records also reflected that Roscoe-Herbert experienced low back pain as a result of the 1986 accident. This was something Roscoe-Herbert previously had failed to reveal. It appears that Roscoe-Herbert considered the focus of her injury to be her neck and shoulders. She stated she sustained some "low back *Page 7 
symptomology [sic], the spasm, the burning from the twisted motion, but the focus of the treatment was neck and shoulder."
 {¶ 16} The description of what occurred during the 1986 accident was similar to what she claimed occurred in the current accident. Roscoe-Herbert revealed that she received medical care and treatment for her neck and back for almost a year following the 1986 accident. She testified on cross-examination that she aggravated her lower back and right leg as a result of the work environment and was treated.
 {¶ 17} Roscoe-Herbert also conceded that she had "symptomology" in her back as a result of the 1994 accident, but that the "sustaining piece was my neck and shoulder." She claimed she did not reveal this prior back pain because the focus was her neck. Upon further questioning, Roscoe-Herbert conceded that she claimed to have sustained similar injuries in the 1994 accident to those being claimed with respect to the present accident, including to her back and radiating to her right leg.
 {¶ 18} Roscoe-Herbert testified on re-direct that she did not have ongoing low back and leg problems since 1978, but rather, she had occasional low back symptoms following the various episodes that dissipated or were resolved over time. Although Roscoe-Herbert claimed at the time of trial she still had burning in her leg every day that had not ceased since the July 2003 accident, she did not make any complaints to her primary care physician during visits in 2004, and she had not been back to see Dr. Shapiro since November 2003. *Page 8 
 {¶ 19} At the conclusion of trial, the jury returned a unanimous verdict in favor of Fabian. Roscoe-Herbert filed a motion for judgment notwithstanding the verdict or a new trial that was denied by the trial court. She has appealed this ruling and has raised two assignments of error for our review. Her first assignment of error provides as follows:
 {¶ 20} "I. The trial court abused its discretion when it denied appellant's motion for a new trial and/or judgment notwithstanding the verdict, when the verdict was against the manifest weight of the evidence."
 {¶ 21} Roscoe-Herbert argues that the trial court abused its discretion in denying her motion because the verdict was against the manifest weight of the evidence. Her argument focuses on the denial of a new trial, as opposed to the denial of her alternate motion for judgment notwithstanding the verdict. Nevertheless, as her assignment of error questions the denial of both, we shall review the trial court's decision as to both.
 {¶ 22} A trial court's decision on a motion for a new trial pursuant to Civ.R. 59 is discretionary. Sharp v. Norfolk W. Ry.,72 Ohio St.3d 307, 312, 1995-Ohio-224. As such, the decision will be disturbed only upon a showing that such decision was unreasonable, unconscionable or arbitrary. Id., citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. Civ.R. 59 provides for the granting of a motion for a new trial where the judgment is not sustained by the weight of the evidence. Civ.R. 59(A)(6). Where there is competent, credible evidence in the record to support the *Page 9 
jury's verdict, a trial court does not abuse its discretion in denying a motion for new trial. See Verbon v. Pennese (1982), 7 Ohio App.3d 182,183.
 {¶ 23} While we review a trial court's ruling on a motion for a new trial for an abuse of discretion, our review of a ruling on a motion for judgment notwithstanding the verdict ("JNOV motion") is de novo.Allegro Realty Advisors, LTD. v. Orion Assocs., Cuyahoga App. No. 87004,2006-Ohio-4588. In considering a JNOV motion, a trial court must construe the evidence most strongly in favor of the nonmoving party and deny the motion if there is substantial evidence upon which reasonable minds could come to different conclusions on the essential elements of the claim. See Civ.R. 50(A)(4); Posin v. A.B.C. Motor Court Hotel
(1976), 45 Ohio St.2d 271, 275. A trial court does not weigh the evidence or judge the credibility of witnesses in ruling on such motion.Lewis v. Nease, Scioto App. No. 05CA3025, 2006-Ohio-4362.
 {¶ 24} Roscoe-Herbert argues that the doctors with whom she sought treatment all diagnosed injuries and two of them opined that she was injured in the motor vehicle accident of July 20, 2003. She states that no medical evidence was offered to controvert these opinions. She also states that while she may not have laundry-listed every prior symptom she had in her back, she did reference past problems in the course of her treatment for the July 2003 accident. She indicates that following the accident, the emergency room doctor diagnosed sciatica and lower back pain. Drs. Weinberger and Vizy diagnosed lumbar strain with right lower *Page 10 
extremity radiculopathy. Dr. Furey diagnosed lumbar muscular strain. Dr. Shapiro found decreased pinprick sensation. Roscoe-Herbert states there was no evidence to establish she was anything but healthy immediately prior to the July 2003 accident. Upon this evidence, she states that the trial court erred in denying her motion.
 {¶ 25} Fabian argues that the jury's verdict was sustained by the weight of the evidence. She argues that the evidence presented showed, among other facts, the following: that the accident was an extremely minimal impact; that the police report was for property damage only and there was no report of any injury at the time of the accident; that Roscoe-Herbert went on a trip shortly after the accident; that Roscoe-Herbert failed to fully disclose she had suffered similar symptoms in prior accidents, including in her low back and right leg; and that, despite her claims to the contrary, Roscoe-Herbert was aware of similar recurrent symptoms over the years. Fabian states that the jury was free to accept or reject the testimony of any witness and, in light of Roscoe-Herbert's failure to fully disclose all of her past problems and similar injuries or symptoms, the medical opinions could be discounted. Essentially, Fabian argues that upon the testimony and evidence presented, and in considering the credibility of the witnesses, the jury could choose to disbelieve Roscoe-Herbert's claim that she was injured in the July 2003 accident.
 {¶ 26} Upon our review, we find the record contains evidence that eroded the credibility of Roscoe-Herbert's witnesses. The record shows that Roscoe-Herbert *Page 11 
was involved in at least three motor vehicle accidents prior to her collision with Fabian. The record shows that Roscoe-Herbert suffered similar symptoms following past collisions to those that she is claiming in this case. Most critically, the record shows that she failed to fully disclose these past accidents, injuries, and/or symptoms to her treating physicians prior to their forming opinions in this case. Because Dr. Furey and Dr. Shapiro based their causation opinions upon an incomplete medical history, the jury could reasonably discount their opinions.
 {¶ 27} Upon the record before us, we find that the jury could reasonably conclude that Roscoe-Herbert's claimed injuries and damages were not caused by the accident with Fabian. As already stated, the witnesses' opinions were put into question by the lack of full disclosure by Roscoe-Herbert. Also, the element of proximate cause was put into question by evidence that Roscoe-Herbert had been involved in prior accidents in which she sustained similar injuries and had received ongoing treatment. Further, the evidence showed that the July 2003 accident was a "light impact" with minimal property damage. There were no documented reports of injury at the time of the accident; Roscoe-Herbert declined an ambulance, and she proceeded to the post office. There were no objective findings of injury at the emergency room, only subjective complaints of pain.
 {¶ 28} We hold that the trial court did not abuse its discretion in overruling the motion for a new trial on the basis that the jury's verdict was supported by substantial competent, credible evidence and was not against the manifest weight of *Page 12 
the evidence.
 {¶ 29} We also find, after construing the evidence most strongly in favor of Fabian, that there was substantial evidence upon which reasonable minds could come to different conclusions on the essential elements of the claim. Accordingly, the JNOV motion was properly denied.
 {¶ 30} Roscoe-Herbert's first assignment of error is overruled.
 {¶ 31} Roscoe-Herbert's second assignment of error provides as follows:
 {¶ 32} "II. The verdict was the result of passion or prejudice on the part of the jury."
 {¶ 33} A new trial may be granted where a jury awards "excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice." Civ.R. 59(A)(4). When reviewing the grant or denial of a new trial pursuant to Civ.R. 59(A)(4), Ohio courts have held that the size of the verdict, without more, is insufficient to prove passion or prejudice. Elwer v. Carrol's Corp., Allen App. No. 1-06-33,2006-Ohio-6085. Instead, "[t]here must be something contained in the record which the complaining party can point to that wrongfully inflamed the sensibilities of the jury." Shoemaker v. Crawford (1991),78 Ohio App.3d 53. In determining whether a verdict was influenced by passion or prejudice, the reviewing court must consider not only the amount of damages returned, but also whether the record discloses the admission of incompetent evidence or misconduct on the part of the court or counsel or other action to sway *Page 13 
the jury. Loudy v. Faries (1985), 22 Ohio App.3d 17. It is also recognized that a trial judge is in the best position to determine whether an award is manifestly excessive or influenced by passion and prejudice. See, generally, Villella v. Waikem Motors, Inc. (1989),45 Ohio St.3d 36.
 {¶ 34} Under this assignment of error, Roscoe-Herbert claims the verdict could only be the result of passion or prejudice in light of the fact that Roscoe-Herbert's injuries were established by the evidence. As found under the first assignment of error, there was substantial evidence upon which the jury could find that Roscoe-Herbert's alleged injuries were not caused by the accident with Fabian and award no damages.
 {¶ 35} Roscoe-Herbert also argues that defense counsel made various egregious statements throughout the trial. She claims that the conduct of defense counsel was a pervasive and conscientious strategy to inflame the jury's passion and prejudice and that she should have been granted a new trial on this basis.
 {¶ 36} Roscoe-Herbert refers to comments such as "when you hear the evidence in this case, I believe you will have a problem keeping a straight face." She also refers to insinuations that were made about Roscoe-Herbert's claiming similar injuries in prior accidents and to having received money from prior lawsuits. Defense counsel made the following statements in closing argument: "Early in the day I get fired up in these kinds of cases, especially when I see people trying to take advantage. She did it twice and we have an opportunity to make sure a third is not *Page 14 
the charm." Defense counsel continued: "she cashed in twice in the past on accidents, one with this same duo of people in that `94 accident. They are trying to do it again." Defense counsel also commented that Roscoe-Herbert was never told to stay at home, despite evidence that showed otherwise. Roscoe-Herbert argues that these statements involved misleading remarks that were not supported by the evidence and were clearly calculated to arouse the passion or prejudice of the jury.
 {¶ 37} Fabian claims that Roscoe-Herbert failed to object to several of the comments, none of the remarks were abusive or improper, and Roscoe-Herbert's credibility was being questioned in this matter. Fabian states that Roscoe-Herbert has failed to show any passion or prejudice by the jury.
 {¶ 38} Insofar as objections were not raised as to some of the comments, we recognize that ordinarily to warrant reversal of a judgment on the ground of misconduct of counsel in his closing argument, a proper and timely objection must be made so that the trial court may take proper action thereon. McBride v. Quebe, Montgomery App. No. 21310,2006-Ohio-5128, citing Snyder v. Stanford (1968), 15 Ohio St.2d 31, syllabus. Further a trial court "Is not required to intervene sua sponte to admonish counsel and take curative action to nullify the prejudicial effect of counsel's conduct' unless an attorney `in closing argument to the jury grossly and persistently abuses his privilege.'"McBride, supra, quoting Snyder, 15 Ohio St.2d at syllabus.
 {¶ 39} We do find some of defense counsel's comments improper. *Page 15 
Specifically, it was improper for counsel to imply that Roscoe-Herbert's compensation for prior injuries was somehow unethical. Although Roscoe-Herbert's credibility as to the cause of her injuries was at issue in this case, there is no evidence in the record to imply that the compensation for her prior injuries was unlawful.
 {¶ 40} Nevertheless, we do not find that any of the comments complained of were so egregious as to inflame the jury or to prejudice Roscoe-Herbert. Given the evidence in this case, defense counsel could draw a reasonable inference that Roscoe-Herbert suffered from a prior condition and had a motive of secondary gain. Roscoe-Herbert's testimony that she did not have similar pain prior to the accident was contradicted by her own medical records, and her credibility was put into question by her failure to fully disclose her accident history and symptoms resulting therefrom. The evidence pertaining to the prior lawsuits also showed that Roscoe-Herbert was aware of prior back pain despite her failure to fully disclose her prior symptoms.
 {¶ 41} It has been recognized that "Inferences drawn from the evidence in the cases are a legitimate source of argument.'" McBride v.Quebe, Montgomery App. No. 21310, 2006-Ohio-5128, quoting Jackson v.Booth Memorial Hosp. (1988), 47 Ohio App.3d 176, 180. Further, "it is axiomatic that great latitude is afforded counsel in the presentation of closing argument to the jury. Included within the bounds of permissible argument are references to the uncontradicted nature of the evidence *Page 16 
presented by the advocate. The assessment of whether these bounds have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. Such determination will not be reversed on appeal absent an abuse of discretion." Pang v. Minch (1990),53 Ohio St.3d 186, 194 (internal citations omitted). Upon our review in this case, we find that defense counsel's comments were not so egregious as to inflame the jury or to prejudice Roscoe-Herbert.
 {¶ 42} Roscoe-Herbert also refers to questions pertaining to her being an educated person that she considered a personal attack, as well as to questions concerning the injuries or symptoms she experienced from the prior accidents that she viewed as badgering and a mischaracterization of her "symptoms" as "injuries." However, a review of the record reflects that this line of questioning occurred as a result of evasive responses being given by Roscoe-Herbert. We do not find that this questioning was improper. Nor do we find that the questioned conduct arose the passion or prejudice of the jury.
 {¶ 43} After reviewing the record, we do not find the trial court abused its discretion in denying a new trial on the ground that the jury awarded "excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice."
 {¶ 44} Roscoe-Herbert's second assignment of error is overruled.
Judgment affirmed.
 It is ordered that appellee recover from appellant costs herein taxed. *Page 17 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 KENNETH A. ROCCO, J., and PATRICIA ANN BLACKMON, J., CONCUR *Page 1